**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**OCT 19 1999**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

ERIC KENNETH AHLENIUS

    Defendant-Appellant.

No. 98-1414
(98-CR-261-1-B)
(D. Colo.)

---

**ORDER AND JUDGMENT**[*]

---

Before **KELLY, HOLLOWAY**, and **BRISCOE**, Circuit Judges.

---

Defendant Eric Ahlenius (Defendant) pleaded guilty to knowingly and intentionally possessing with the intent to distribute (and actual distribution) of crack cocaine in violation of 18 U.S.C. § 2 and 21 U.S.C. §§ 841(a)(1) & (b)(1)(B)(iii). Defendant moved to withdraw his guilty plea, however, after the amended presentence report suggested that he receive a career offender enhancement. The district judge denied the motion and applied the career offender enhancement to Defendant. This timely appeal ensued. We have jurisdiction pursuant to 28 U.S.C. § 1291.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

# I

In August 1998, Defendant pleaded guilty to knowingly and intentionally possessing with the intent to distribute (and actual distribution) of crack cocaine in violation of 18 U.S.C. § 2, aiding and abetting, and 21 U.S.C. §§ 841(a)(1) & (b)(1)(B)(iii).  See 1 Supp. App. Doc. 32 at 2; 1 App. Doc. 8 at 2.  The plea agreement suggested that Defendant's sentence would range from either 110 to 137 months or from 151 to 181 months (depending on whether the district judge considered a prior drug transaction relevant conduct with the current offense).  See id. at 2, 7, 8.  The sentencing ranges were based, in part, on the parties' belief that Defendant was not eligible for a career offender enhancement.  See id. at 6, 7.

The agreement noted, however, that the criminal history computation was "tentative," see id. at 6, that the judge was not bound by the sentence determinations of the parties, see id. at 5, and that the judge had discretion to consider other factors in sentencing, see id. at 3, 5.  Moreover, the district judge emphasized during his colloquy with Defendant at his arraignment on August 14, 1998 that the plea agreement provided only an estimate of the sentence and that the district judge would determine the sentence, based on the information contained in the presentence report (not based on the plea agreement).  See 2 App. at 7-8.  Defendant, on more than one occasion, stated that he understood that the district judge had discretion in sentencing.  See 1 Supp. App. 31 at 1;

2 App. at 7-8.[1]

After the district judge accepted the plea agreement,[2] the probation office prepared

a presentence report which suggested that Defendant's three prior convictions for escape

and attempted escape might constitute crimes of violence warranting the career offender

enhancement. See P.S.R. at 5. However, the probation office could find no binding

precedent holding that escape attempts similar to Defendant's constituted crimes of

violence. See id. The office therefore used the "rule of lenity" and did not apply the

career offender enhancement to Defendant in the report. See id.

The government responded by providing the probation office with binding Tenth

Circuit precedent which purported to hold that all escape attempts were crimes of

violence. See Addendum to the P.S.R. at 1. The probation office then amended the

presentence report to suggest that the district judge apply the career offender

enhancement to Defendant. See id. With the enhancement, the presentence report

determined that Defendant's sentencing range was 262 to 327 months (that range

_____

[1] The Defendant was thirty years old at the time of his arraignment on August 14, 1998. Id. at 2-3. He had gone to school until the tenth grade, withdrawing from school that year. P.S.R. at 13.

[2] The government states in its brief that Defendant moved to withdraw his plea before the district judge accepted it. See Appellee's Response Br. at 1. The record, however, indicates that the district judge accepted the plea on August 14, 1998, see 2 App. at 16, which occurred before Defendant's motion to withdraw the agreement on October 2, 1998. See 1 App. 40 at 1. We do not consider the ability of a defendant to withdraw a plea before it is accepted. Cf. United States v. Alvarez-Tautimez, 160 F.3d 573, 576 (9th Cir. 1998) ("Alvarez had the absolute right to withdraw his plea before it was accepted by the district court.").

determination was based, in part, on the probation office's determination that a prior drug transaction was relevant conduct with the current offense).  See 4 App. at 20.

In response, Defendant moved to withdraw his guilty plea on October 2, 1998.  See 1 App. 40 at 1.  At the sentencing hearing on October 23, 1998, the district judge denied the motion because: (1) Defendant had never asserted his innocence, (2) the government would be prejudiced by allowing the Defendant to withdraw his plea, (3) the court would be inconvenienced because Defendant moved to withdraw his plea merely to dispute the length of sentence, not to assert his innocence, and (4) Defendant had been advised that the court and not the plea agreement would determine the length of sentence.  See 3 App. at 11-14.

Thereafter, the district judge applied the career offender enhancement to Defendant, see 4 App. at 15, and found that a prior drug transaction was relevant conduct with respect to the current offense, see id. at 16-17, 19.  The judge therefore determined that Defendant's sentencing range was 262 to 327 months.  See id. at 20.  The district court then sentenced Defendant to the lowest sentence within that range, 262 months, at the continued sentencing hearing on October 30, 1998.  See id.

## II

### A

Defendant argues that the district judge abused his discretion by refusing to allow Defendant to withdraw his guilty plea.  See United States v. Guthrie, 64 F.3d 1510, 1513

(10th Cir. 1995) (stating the standard of review).

Before imposing a sentence, a district judge "may permit the plea to be withdrawn if the defendant shows any fair and just reason." Fed. R. Crim. P. 32(e). In making that determination, a court ordinarily weighs seven factors. See United States v. Gordon, 4 F.3d 1567, 1572 (10th Cir. 1993) (listing the seven factors). Defendant does not dispute the district judge's balancing of those factors. Instead, Defendant presents four arguments why the district judge nevertheless abused his discretion by denying Defendant's motion. See Appellant's Opening Br. at 4-10.

First, Defendant argues that both his attorney and the government were mistaken about whether the career offender enhancement would apply to him. See id. at 9-10. According to Defendant, the plea agreement should have been voided pursuant to the contractual doctrine of "mutual mistake." See id.

"In determining the rights of a defendant . . . under a plea agreement in a criminal proceeding the courts have frequently looked to contract law analogies." United States v. Gamble, 917 F.2d 1280, 1282 (10th Cir. 1990) (citation, alteration, and internal quotation marks omitted). Despite that general rule, a mutual sentencing error does not void a plea agreement when the agreement is made "with the knowledge that the sentencing recommendation is nonbinding." United States v. Williams, 919 F.2d 1451, 1457 (10th Cir. 1991); United States v. Barnes, 83 F.3d 934, 938-39 (7th Cir. 1996) (stating a similar rule); United States v. Olveros-Orosco, 942 F.2d 644, 646 (9th Cir. 1991) (stating a

similar rule). Courts have adopted that rule because the doctrine of mutual mistake voids a contract only when the mistake involves a contract's "essential terms." Barnes, 83 F.3d at 938. If the parties have knowingly left sentencing to the discretion of the judge, then the sentence is not an "essential term" of the plea agreement. See Williams, 919 F.2d at 1457 ("If neither the plea agreement nor the court has guaranteed the defendant that the plea agreement stipulations are binding, a defendant cannot claim undue surprise or that the plea is rendered involuntary when the court exercises this power.").

As noted above, both the plea agreement itself and the district judge during the colloquy informed Defendant that the sentencing recommendation was not binding on the court. Therefore, the plea agreement is not void pursuant to the doctrine of mutual mistake.

Defendant next suggests that the agreement is void under the contractual doctrine of frustration of purpose. See Appellant's Opening Br. at 8-9. Although we have applied that doctrine to plea agreements, see United States v. Bunner, 134 F.3d 1000, 1004 (10th Cir. 1998), that doctrine requires, among other factors, that "the intervening event cannot fairly be regarded as within the risks the frustrated party assumed under the contract," id. As stated above, Defendant assumed the risk that the district judge would impose a sentence outside of the estimate provided in the plea agreement. That being so, the parties' sentencing mistake did not frustrate the purpose of the plea agreement.

Defendant next argues that he should be able to withdraw his plea because his

attorney's mistake -- believing that the career offender enhancement would not apply -- constitutes ineffective assistance of counsel. See Appellant's Opening Br. at 10. We have previously refused to allow defendants to withdraw their plea agreements under similar circumstances. See United States v. Rhodes, 913 F.2d 839, 843 (10th Cir. 1990) ("The fact that the applicable Sentencing Guideline range was higher than defense counsel estimated, however, does not demonstrate a violation of Federal Rule of Criminal Procedure 11."). Moreover, we have held that "a miscalculation or erroneous sentence estimation by defense counsel is not a constitutionally deficient performance rising to the level of ineffective assistance of counsel." Gordon, 4 F.3d at 1570. In the circumstances, Defendant's argument is not well taken.

Finally, Defendant argues that he should be allowed to withdraw his plea because the government acted in bad faith by "zealously" arguing for the enhancement (and against the withdrawal of the plea agreement). See Appellant's Opening Br. at 8. "[I]n enforcing plea agreements, the government is held only to those promises that it actually made to the defendant." United States v. Peglera, 33 F.3d 412, 413 (4th Cir. 1994); see also United States v. Furman, 112 F.3d 435, 439 (10th Cir. 1997) ("[O]bligations do not issue from mere silence; we shall not impose duties on the government that are not an express or implied part of its agreement with the defendant."). Here, the government never promised not to argue for a career offender enhancement. To the contrary, the plea agreement states that it "does not preclude either party from presenting and arguing, for

sentencing purposes, additional facts or factors not included herein which are relevant to the guideline computation . . . or to sentencing in general. . . ." 1 Supp. App. Doc. 32 at 3. In the circumstances, the government's decision to argue for the enhancement does not require withdrawal of the plea agreement.

Taken together, the district judge did not abuse his discretion by refusing to allow Defendant to withdraw his guilty plea.

**B**

Defendant next argues that the district judge erred by holding that Defendant satisfied the requirements for the career offender enhancement. See Appellant's Opening Br. at 11-15. We review that decision de novo. See United States v. Bennett, 108 F.3d 1315, 1316 (10th Cir. 1997).

The Sentencing Guidelines enhance a defendant's sentence if he or she is a career offender:

> A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction, (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense, and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

U.S.S.G. § 4B1.1. Defendant concedes that he satisfies the first two requirements, but argues that at least two of his three escape and attempted escape convictions were not "crime[s] of violence." See Appellant's Opening Br. at 11-15.

The Sentencing Guidelines define "crime of violence" as, among other things, any

felony that "involves conduct that presents a serious potential risk of physical injury to another." U.S.S.G. § 4B1.2(a)(2). In United States v. Gosling, 39 F.3d 1140 (10th Cir. 1994), we held that an "escape conviction by its nature involves conduct that presents a serious potential risk of physical injury to another. . . ." Id. at 1142-43. Defendant argues, however, that Gosling applies only to escapes from physical custody (and, in particular, jail as was at issue in Gosling). See Appellant's Opening Br. at 12, 14. According to Defendant, he was not in physical custody during at least two of his escape attempts and therefore Gosling does not govern this case. See Appellant's Opening Br. at 12, 14.

Contrary to Defendant's argument, we announced a per se rule in Gosling that applies to all escape convictions regardless of the underlying facts. See 39 F.3d at 1142 ("[E]very escape scenario is a powder keg, which may or may not explode into violence and result in physical injury to someone at any given time, but which always has the serious potential to do so.") (emphasis in original); see also United States v. Moudy, 132 F.3d 618, 620 (10th Cir. 1998) ("[A]n escape always constitutes conduct that presents a serious potential risk of physical injury to another. . . .") (citation and internal quotation marks omitted); United States v. Mitchell, 113 F.3d 1528, 1533 n.2 (10th Cir. 1997) ("Gosling still stands for the proposition that, regardless of the facts underlying a particular escape, the offense of escape, by its nature, presents a serious potential risk of injury to another and is thus properly characterized as a 'crime of violence'"). We have

- 9 -

applied that per se rule to non-jail escapes, including "nonviolent walkaways from unsecured correctional facilities." Id. at 1533 (internal quotation marks omitted). Although Defendant has presented a strong argument why escape should not constitute a crime of violence when the escape is not from physical custody, we are bound by our precedent which does not allow us to look at the facts of conviction. See id. at 1533 n.2. In the circumstances, Defendant must pursue his argument before the court sitting en banc. Cf. United States v. Nichols, 169 F.3d 1255, 1261 (10th Cir. 1999) ("We cannot overrule the judgment of another panel of this court. We are bound by the precedent of prior panels absent en banc reconsideration or a superseding contrary decision by the Supreme Court.") (citation and internal quotation marks omitted), cert. denied, No. 99-5063, ___ S. Ct. ___, 1999 WL 462439 (U.S. Oct. 12, 1999).

The district court did not err by applying the career offender enhancement to Defendant.

**C.**

Defendant argued below that a prior drug transaction did not constitute relevant conduct with the current offense. The district court disagreed, combining the weight of the previous and charged offenses to determine the drug quantity for sentencing. See 4 App. at 16-17, 19. On appeal, Defendant did not object to the district court's decision on this question in his opening brief. After the parties finished briefing the case, however, we held in United States v. Santos, No. 98-1344 1999 WL 694275, *2 (10th Cir. Sept. 8,

1999), that "drug quantities triggering the mandatory sentences prescribed in [21 U.S.C. § 841(b)] are determined exclusively by reference to the offense of conviction." The government concedes that, pursuant to Santos, the district court incorrectly determined Defendant's sentence range.

Ordinarily, the failure of a party to raise an issue in an opening brief waives that issue. See United States v. Sandia, No. 98-2248, 1999 WL 638219, *2 n.3 (10th Cir. Aug. 23, 1999). "Despite this rule, however, appellate courts may in their discretion consider issues not properly raised in an opening brief." Gambino v. Morris, 134 F.3d 156, 169 (3d Cir. 1998); see also Headrick v. Rockwell Intern. Corp., 24 F.3d 1272, 1278 (10th Cir. 1994) (noting that the general rule is subject to exceptions). We note three factors that favor exercising our discretion to address the newly-raised issue in this case: (1) Santos was decided after the parties filed their briefs; (2) the application of Santos presents solely a question of law; and (3) in a Supplemental Brief filed on September 29, 1999, at p.5, the government noted the Defendant's failure to raise this issue but stated that "the government nevertheless would not oppose a remand in this case for re-sentencing consistent with the holding of Santos." Cf. United States v. Ullah, 976 F.2d 509, 514 (9th Cir. 1992) ("We will review an issue not presented in an opening brief for good cause shown or if failure to do so would result in manifest injustice.") (citation and internal quotation marks omitted). We are persuaded that we should address the newly-raised issue. We therefore vacate Defendant's sentence and remand for re-sentencing in

- 11 -

light of <u>Santos</u>.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED FOR RE-SENTENCING

Entered for the Court


William J. Holloway, Jr.
Circuit Judge