**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

v.

SHANE RUSSELL SAVAGE,
            *Defendant-Appellant.*

No. 06-30451

D.C. No.
CR-04-00128-RFC

OPINION

Appeal from the United States District Court
for the District of Montana
Richard F. Cebull, District Judge, Presiding

Argued and Submitted
April 13, 2007—Seattle, Washington

Filed June 12, 2007

Before: Alex Kozinski and Raymond C. Fisher,
Circuit Judges, and Andrew J. Guilford, District Judge.*

Opinion by Judge Fisher

---

*The Honorable Andrew Guilford, United States District Judge for the
Central District of California, sitting by designation.

## COUNSEL

Robert L. Kelleher Jr., Billings, Montana, for the defendant-appellant.

William W. Mercer, United States Attorney, Marcia Hurd (argued), Assistant United States Attorney, Billings, Montana, for the plaintiff-appellee.

## OPINION

FISHER, Circuit Judge:

Appellant Shane Russell Savage appeals the district court's calculation of his recommended sentence under the United States Sentencing Guidelines ("Guidelines"), arguing that his prior state conviction for escape was not a crime of violence warranting a sentence enhancement under the Guidelines. We affirm the enhancement and hold that where the appropriate documents reveal that a defendant was previously convicted of escaping from a jail or prison, the previous conviction qualifies as a "crime of violence" under U.S.S.G. § 4B1.2(a).

*I. Background*

Savage pled guilty to and was sentenced for possession of an unregistered firearm and possession of a firearm not identified by a serial number in violation of 26 U.S.C. §§ 5841, 5861(d), 5861(i) and 5871. In its original sentencing, the district court found that Savage had at least two prior felony convictions that qualified as crimes of violence — a 2004 state conviction for felony assault with a weapon and a 2004 state conviction for escape. *See United States v. Savage*, 178 F. App'x 726, 727-28 (9th Cir. 2006).

Savage conceded that felony assault with a weapon is a crime of violence, but disputed that felony escape qualified as such. *Id.* The district court ruled that the felony escape was categorically a crime of violence, noting that (at that time) the issue was an open question in our circuit but that "every circuit in the country, except the Ninth Circuit, had held that escape categorically constituted a crime of violence under § 4B1.2(a)." *Id.* at 728. Accordingly, the district court sentenced Savage under U.S.S.G. § 2K2.1(a)(1), which governs the base offense level for Savage's crime of conviction when a defendant has two or more previous convictions for crimes of violence.

In Savage's first appeal, we remanded for resentencing in light of the intervening case of *United States v. Piccolo*, 441 F.3d 1084 (9th Cir. 2006), in which we held that escape is not *categorically* a crime of violence but could qualify as such under the modified categorical approach. *Savage*, 178 F. App'x at 728. During resentencing, the district court concluded that under the modified categorical approach, based on the available charging and sentencing documents, Savage's 2004 felony escape conviction did qualify as a "crime of violence" under U.S.S.G. § 4B1.2(a),[1] giving him the requisite minimum of two prior such convictions.

## II. *Discussion*

We review the district court's interpretation of the Sentencing Guidelines de novo. *See United States v. Cantrell*, 433 F.3d 1269, 1279 (9th Cir. 2006). The district court calculated Savage's base offense level under U.S.S.G. § 2K2.1(a), which provides in relevant part that the sentencing court should choose the greater of:

> (1) 26, if (A) the offense involved a (i) semiautomatic firearm that is capable of accepting a large capacity magazine; or (ii) firearm that is described in 26 U.S.C. 5845(a); and (B) the defendant committed any part of the instant offense subsequent to sustaining at least *two* felony convictions of either a *crime of violence* or a controlled substance offense;

> . . .

> (3) 22, if (A) the offense involved a (i) semiauto-

---

[1]Savage has two prior convictions for escape, one in 1993 and another in 2004. The documents for Savage's first escape conviction could not be obtained for resentencing, so the district court addressed only the possibility that Savage's 2004 escape conviction qualified as a crime of violence under the modified categorical approach. We do the same.

matic firearm that is capable of accepting a large capacity magazine; or (ii) firearm that is described in 26 U.S.C. 5845(a); and (B) the defendant committed any part of the instant offense subsequent to sustaining *one* felony conviction of either a *crime of violence* or a controlled substance offense.

(Emphasis added). Savage contends that the court should have calculated his offense level under § 2K2.1(a)(3) rather than (a)(1) because his previous felony escape was not a "crime of violence," and therefore only his previous conviction for felony assault with a weapon qualified as such.

**[1]** A "crime of violence" is defined by U.S.S.G. § 4B1.2(a) as:

> any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another.*

(Emphasis added). "Because escape is neither specifically enumerated under U.S.S.G. § 4B1.2 nor has as 'an element the use, attempted use, or threatened use of physical force against the person of another,' the offense, to qualify as a crime of violence, must fall within the 'catchall' provision of § 4B1.2(a)(2) for 'conduct that presents a serious potential risk of physical injury to another.' " *Piccolo*, 441 F.3d at 1086.

**[2]** In *Piccolo*, we held that a "walkaway escape" under a statute that includes escapes accomplished by nonviolent means is not categorically a crime of violence under U.S.S.G. § 4B1.2. Piccolo had been convicted under a federal escape

statute for his failure to return to a halfway house after leaving with permission to attend a drug treatment meeting. *Id.* at 1085, 1089. We reasoned that escape under the federal statute that criminalized such "walkaway escapes" from institutions that allowed residents "certain privileges of ingress and egress" could not be a categorical crime of violence in light of our decision in *United States v. Kelly*, 422 F.3d 889 (9th Cir. 2005). *Id.* at 1088.

In *Kelly*, we held that a defendant's conviction under a Washington statute criminalizing attempts to elude a police vehicle did not constitute a crime of violence under the categorical approach. The statutory definition of the crime included driving that posed danger only to others' property, and Washington courts had construed the statute such that there was no "requirement that anyone actually be endangered by the defendant's conduct." *Kelly,* 422 F.3d at 893. Nor could the government demonstrate that Kelly's previous conviction was for a crime of violence under the modified categorical approach. The available documents there "simply track[ed] the statutory language" and failed to "set forth the elements of Kelly's conviction." *Id.* at 896. Comparing escape to the crime discussed in *Kelly*, we observed in *Piccolo* that:

> The circumstances in *Kelly* involved close physical confrontation under circumstances leading to a much greater possibility of violence than walkaway escape. The offense in *Kelly* also contained an "endangerment" provision not present in the escape statute at bar, making the latter offense, by comparison, even less likely to qualify as a "crime of violence." We conclude that *Kelly* controls the outcome of this case, resolving, *a fortiori*, that a walkaway escape is not a crime of violence.

441 F.3d at 1088.

**[3]** Like the federal escape statute at issue in *Piccolo*, the Montana escape statute under which Savage was convicted

does "not differentiate between violent and non-violent escapes" and includes escapes from facilities that "run[ ] the gamut from maximum-security facilities to non-secure half-way houses." *Id.* Montana Code Annotated § 45-7-306(2) provides that escape includes purposeful "fail[ure] to return to official detention following temporary leave granted for a specific purpose or limited time" as well as "knowingly or purposely elud[ing] official detention." Thus, as we concluded on Savage's first appeal, Savage's conviction under the Montana escape statute cannot categorically constitute a crime of violence. *Savage*, 178 F. App'x at 728.

**[4]** *Piccolo* explicitly noted, however, that the court's "conclusion that a conviction for escape . . . does not categorically qualify as a crime of violence does not preclude the government from demonstrating, under a modified categorical approach, that a specific conviction for escape would meet the requisite standard." 441 F.3d at 1088 n.7. Under the modified categorical approach, when the language of the statute of conviction is insufficient to determine whether the defendant previously committed an offense within the Guidelines definition, the court examines "the statutory definition, charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented." *Shepard v. United States*, 544 U.S. 13, 16 (2005).

**[5]** Unlike *Kelly*, the documents we may examine here under the modified categorical approach reveal a key detail about Savage's previous conviction. Based on the charging document and the transcript of Savage's plea allocution to the 2004 escape charges, it is clear that he was convicted for escaping from a *jail*, rather than from a facility that allowed its residents privileges of ingress and egress. Savage stated "I'm guilty of Escape for — I was being held in the Gallatin county jail and on June 29th, 2003, I escaped from jail." Savage's escape, therefore, was qualitatively different from the walkaway escape at issue in *Piccolo*.

Contrary to Savage's suggestion, *Piccolo* does not stand for the broad proposition that a prior conviction for escape is not a crime of violence unless the relevant documents reveal that the defendant used violent means to effect his escape. Rather, in *Piccolo*, we broke with those circuits that had "held that *any* escape, however effected, categorically constitutes a crime of violence." *Id.* at 1088 (emphasis added). We carved out an exception to these circuits' broad rule in the case of "an escapee who leaves a halfway house with permission and fails to return" and held that escapes of that nature, from that type of facility, could not be likened "to a 'powder keg, which may or may not explode into violence and result in physical injury to someone at any given time, but which always has the serious potential to do so.' " *Id.* at 1089 (distinguishing *United States v. Gosling*, 39 F.3d 1140, 1142 (10th Cir. 1994)). As we observed, the absence of constant surveillance and armed guards makes the crucial difference in whether an escape constitutes a crime of violence:

> We think that the circumstances apparent in a walk-away escape are of an entirely different order of magnitude than *escapes from jails and prisons.* Residents of halfway houses have certain privileges of ingress and egress, do not live behind concrete walls and barbed wire, and are not under constant surveillance by armed guards. Those who leave without returning do not pose an automatic risk of danger and therefore do not categorically raise a serious potential risk of physical harm. Thus, convictions for walkaway escape could clearly take place "on the basis of conduct that did not present a serious potential risk of physical injury to another."

*Id.* at 1088 (emphasis added) (quoting *Kelly*, 422 F.3d at 893); *see also id.* at 1089 (acknowledging that "an escapee who flees a secured facility or the custody of an armed guard presents a serious risk of injury to himself and others").

Here, as the district court noted, "police officer[s] in a jail, detention center, they're under a duty to try and prevent escape" and had an officer seen Savage escaping "that officer would have had the duty to attempt to prevent it." That Savage claims he escaped by sneaking through a hole in the fence when no one was looking is irrelevant. Not only are such details not contained within the documents we may examine under the modified categorical approach, but also had law enforcement officers in charge of the jail realized that Savage was escaping, any attempt to stop him risked their own safety and that of others, including Savage himself.

Moreover, the relevant question here is not whether it is certain that an escape would result in physical injury to another, but rather whether an escape presented a "serious *potential risk* of physical injury to another." U.S.S.G. § 4B1.2(a)(2) (emphasis added). The Supreme Court recently explained when interpreting identical language in the Armed Career Criminal Act that a "potential risk" involves "inherently probabilistic concepts" and "the combination of the two terms suggests that Congress intended to encompass possibilities even more contingent or remote than a simple 'risk,' much less a certainty." *James v. United States*, 127 S. Ct. 1586, 1597 (2007). The potential risk of injury to others during an escape from a guarded facility is as great whether or not the escapee is observed and there is an attempt to stop him. Thus even were the facts of Savage's "clean getaway" noticeable under the modified categorical analysis, they would not bear on the potential for risk of injury to others.

**[6]** Accordingly, because the appropriate documents establish that Savage was convicted of escaping from a jail, his previous conviction qualifies as a "crime of violence" under § 4B1.2(a). The sentence the district court imposed is **AFFIRMED**.